The opinion of the Court was delivered by
Bunkin, C. J.
Upon questions of fact, this Court rarely interferes with the conclusions of the Chancellor, or the verdict of a jury.
The only foundation for the three principal grounds of appeal, is the uncorroborated statement in the answer of William B. Jennings. The interrogatories in the bill, when *319 taken in connection with the charges, amount to no more than an inquiry as to the payment of the money, and the cause of the omission to make titles at the time. This the defendant might have answered in the affirmative, or negative, but instead of this, be insists by way of avoidance, on a distinct fact — an agreement entered into in violation of the laws of the land. It is very questionable how far, in such case, the answer is evidence of such fact. (See Green vs. Hart, 1 John R. 590; Hart vs. Ten Eyck, 2 Johns Ch. 38.)
But the answer was received and weighed by the Chancellor. And this Court is entirely satisfied with his judgment, that it is not only inconsistent with the testimony in the case, but with his own declarations and conduct. It is a familiar principle of equity, that “ if a person having a right to an estate, permit or encourage a purchaser to buy it of another, the purchaser shall hold it against the person who has the right.” (2 Sugd. Vend. 262.) Spann Hammond was negotiating with Bass for the purchase of this land and mill. On application to Jennings as to the titles, Jennings said “ he had given Bass a receipt for titles which was as good as a title, and if the witness would get a receipt from Bass, the parties would make Hammond a title,” &c. The same witness proves that he, Jennings, actually encouraged the plaintiff in the purchase of the property, and in case of necessity proffered to aid him with the means. It cannot be supposed that about 5th April, 1865, Spann Hammond was negotiating for the purchase of the right to “occupy and use the land, and tannery, and distillery, and mill, during the existence of the war,” which was then waging, &c., or that Jennings proffered to assist the plaintiff in raising forty-five thousand dollars, for the purchase of such right at that time.
In the sixth ground error is imputed to the Chancellor, in stating that “ no one denied that a receipt for titles was given by W. D. Jennings to said J. A. Bass for the land.” *320 The language of the decree is, (referring to the loss of the receipt,) “ but it is not denied by any of the parties, that a receipt for the purchase-money had been given to him, (Bass,) and also for titles.” Parties means of course, the parties to the sale. No denial is made in the answer of Robertson, W. L. Parks or Blair, and these with W. D. Jennings constituted the Company. The answers of Jennings (although the bill alleged that “ the instrument of writing had been lost, mislaid or destroyed”) neither denies the execution of the paper, nor the loss ; but in his conversation with the witness Chamberlain, Jennings stated explicitly that he “ had given Bass a receipt for titles ; he had given him no titles, but a receipt for titles, which was as good as a title.”
Then as to the loss of the receipt. A loss, says Lord Lang-dale, in Cackell vs. Ridgman, (4 Beav. 500,) “ may be more or less susceptible of proof, according to circumstances. In some cases, it may be clearly and distinctly proved; in other cases, it may be reasonably inferred from circumstances, and every case must to some extent, depend upon its own circumstances.” Bass had left the State; Cartledge, one of the witnesses,' “ heard Bass say he had been robbed at the mill, and did not care for what he had lost, but a receipt he had in his coat pocket, the receipt from W. D. Jennings & Co.” John E. Bacon said he was called on by “ W. D. Jennings, Blair, and the plaintiff, (R. T. Parks,) to draw what he (witness) conceived to be a deed, from Bass to R. T. Parks; witness drew the deed, and left it in the possession of Parks; the deed was for a certain mill; witness has an indistinct recollection of a lost paper being mentioned by the parties; witness did not consider Parks as his client; he looked to Dr. Jennings in the matter.” However strong this may be as to the conviction of Jennings and Blair, that Bass was entitled to convey to the plaintiff) and that they so represented, it would be inconclusive as to the *321 fact of loss of the instrument given by Jennings to Bass. But, taken in connection with the other circumstances of the case, it was sufficient to satisfy the Chancellor. So far back as December, 1868, (says Blair in his answer,) James A. Bass did purchase from William D. Jennings & Co. the tract of land, &c., for twenty thousand dollars. It was proved that the consideration money was divided between the parties; that Bass went into possession, and continued in possession until April, 1865, when he sold to the plaintiff, who has since held possession. If there had been no transfer by Bass to the plaintiff, and these proceedings were by J. A. Bass against W. D. Jennings & Co., to complete the title, the usual practice of this Court would entitle him to a decree.
Nor can the seventh ground of appeal avail the defendant. It was for J. A. Bass to estimate the value of the consideration on- 5th April, 1865, when, under his hand and seal, he directed W. D. Jennings & Go. to make titles to the plaintiff for the tract of land, with the tannery, distillery, and mill thereon, for which he had on that day received full payment. The effect of the decree is only to require that to be done now, through the Commissioner, which should have, at that time, been done by the parties themselves.
It is ordered and decreed, that the decree of the Circuit Court be affirmed, and that the appeal be dismissed. -
Wardlaw, and Inglis, A. JJ., concurred.

Decree affirmed.